UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLA L. TONEY, on behalf
of CCT, a minor,

       Plaintiffs,                            CIVIL ACTION NO. 09-14721

       v.                                   DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF                   MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On December 3, 2009, Ella Toney, on behalf of her minor child CCT ("Plaintiff"), filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 13, 18).

    *B.    Administrative Proceedings*

Ms. Toney filed the instant claims on December 18, 2006, on behalf of Plaintiff, her minor child (Tr. 83-85). The claim was initially disapproved by the Commissioner on February 16, 2007 (Tr. 46-49). Ms. Toney then requested a hearing and, on May 14, 2009, appeared with counsel before Administrative Law Judge (ALJ) Troy M. Patterson, who considered the case *de novo*. In a

decision dated June 16, 2009, the ALJ found that Plaintiff was not disabled (Tr. 11-30). Ms. Toney requested a review of this decision on June 26, 2009 (Tr. 9-10). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits (28F, Tr. 4), the Appeals Council, on October 1, 2009, denied her request for review (Tr. 1-3).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 10 years old at the time of the most recent administrative hearing, having been born on July 10, 1998 (Tr. 17). Plaintiff is a minor who has never worked. (Tr. 17). The ALJ applied a three-step sequential evaluation process to determine whether Plaintiff (under the age of 18) was disabled. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity (Tr. 17). At step two, the ALJ found that Plaintiff had the following "severe" impairments: attention deficit hyperactivity disorder and speech and language delays. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. The ALJ next determined the degree of limitation in each of six functional domains, and found that Plaintiff did not have an impairment or combination of impairments that functionally equaled the listings. The ALJ's specific findings as to the six functional domains were: Acquiring and Using Information (Plaintiff had marked limitation); Attending and Completing Tasks (Plaintiff had less than marked limitation); Interacting and Relating with Others (Plaintiff had less than marked limitation); Moving About and Manipulating Objects

(Plaintiff had no limitation); Caring for Yourself (Plaintiff had less than marked limitation); and Health and Physical Well-Being (Plaintiff had no limitation) (Tr. 18-25).

### B. *Administrative Record*

#### 1. Hearing Testimony

At the May 2009 hearing, Plaintiff's mother testified that Plaintiff was in the fourth grade, after having been held back a year between kindergarten and first grade (Tr. 37). She testified that Plaintiff's teachers were currently considering her for placement in summer school (Tr. 38). Plaintiff recently had her medication, Concerta,[1] adjusted, and was taking 54 mg (Tr. 38). According to Plaintiff's mother, teachers reported that the medication helped Plaintiff at school, and improved her focus (Tr. 40). Plaintiff also saw a psychologist (Tr. 40). Plaintiff's mother denied that Plaintiff had any physical altercations at school but acknowledged she was disruptive, and did not have friends (Tr. 41). Plaintiff's mother testified that Plaintiff required reminders to do household chores, like making her bed (Tr. 40).

#### 2. Medical Evidence

In February 2005, Plaintiff's first grade teacher, Clayton Diebold, reported that Plaintiff showed below-average reading and math skills and required a lot of assistance due to her short attention span and retention (Tr. 137). Plaintiff became easily frustrated and was disruptive in groups (Tr. 137). During March 2005 testing by a speech therapist at school, it was noted that Plaintiff had difficulty staying on task (Tr. 142). Plaintiff also had an expressive language disorder and articulation disorder (Tr. 98). In September 2006, Plaintiff underwent a speech and language

---

[1]Concerta is a trademark preparation for methylphenidate hydrochloride, which is a central stimulant used in the treatment of attention deficit hyperactivity disorder. Dorland's Illustrated Medical Dictionary (31st Ed.) 2007 pp. 406, 1171.

evaluation, during which the school speech pathologist observed that Plaintiff was able to follow directions and completed all tasks required of her (Tr. 148-49).

During the second grade, Plaintiff underwent a special education evaluation at school (Tr. 150). The evaluator noted that Plaintiff took no medications (Tr. 151). Her teachers reported inattentive behavior and low academic performance (Tr. 151-52). Plaintiff was easily distracted by hallway noises (Tr. 152). The evaluator observed characteristics consistent with Attention Deficit Hyperactivity Disorder (ADHD) and recommended medical evaluation (Tr. 161).

Plaintiff's teacher from the first half of the year, Lisa Noack, reported in January 2007 that Plaintiff had a serious problem attending to tasks in the classroom (Tr. 209). Plaintiff's doctor prescribed Concerta in January 2007 following the school evaluation (Tr. 182).

In January 2007, Plaintiff's second grade teacher, Debra Boyer, completed an evaluation after Plaintiff had transferred to a new school and attended classes for a few days (Tr. 124). Ms. Boyer observed that Plaintiff was behind in reading, math and writing but did not find this unusual (Tr. 131). Ms. Boyer was aware that Plaintiff was on medication for ADHD (Tr. 130). Three weeks later, the claims representative reported that the teacher had been re-contacted and opined that Plaintiff was functioning academically at a late first grade to early second grade level, but was not in special education (Tr. 133). Ms. Boyer reported that Plaintiff did not start her assignments right away and needed reminders once or twice a day (Tr. 133). Ms. Boyer also stated that Plaintiff did not need one-on-one supervision to finish a task, was able to wait her turn, and presented no disruption or other behavioral concerns in the classroom (Tr. 133). Plaintiff was able to focus long enough to finish a task without being re-directed (Tr. 133). She got along with peers and teachers (Tr. 133). Ms. Boyer opined that Plaintiff may have had more delays in the classroom prior to being prescribed medication for her condition (Tr. 133).

In February 2007, a state agency psychiatrist, Robert Newhouse, reviewed the medical evidence and opined that Plaintiff's impairments did not meet, medically equal, or functionally equal the listings (Tr. 222). Dr. Newhouse opined that Plaintiff had marked limitations in the functional domain of acquiring and using information, but less than marked limitations in the domains of attending and completing tasks, interacting with others, and caring for herself (Tr. 224-25). He additionally concluded that she had no limitations in the remaining domains of moving about and manipulating objects, and health and physical well-being (Tr. 225).

On her second grade report card, Ms. Boyer reported that Plaintiff had achieved a "plus" grade in the areas of staying on task, changing activities smoothly, and showing motivation and self-direction (Tr. 275).

### C. *Plaintiff's Claims of Error*

Plaintiff's sole argument is that the ALJ erred in failing to find that Plaintiff had a marked impairment in the functional domain of attending and completing tasks (Pl.'s Br. at 7).

**DISCUSSION**

### A. *Standard of Review*

A court applies the same standard of review to the Commissioner's decision denying benefits to a child as to an adult, as both are governed by 42 U.S.C. § 405(g). Under that statute, the Commissioner's decision must be affirmed if it is supported by substantial evidence, even if this court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (per curiam). A court cannot reverse the agency's decision if substantial evidence also supports an

opposite conclusion, but only if substantial evidence does not support the ALJ's conclusion. *Crum*, 921 F.2d at 644. It is Plaintiff's burden to establish disability. *Id.*

Although the standard of review of the Commissioner's decision is the same as for adults, children's disability claims are reviewed under criteria different from adults. There is no five step evaluation, but pursuant the 1996 enactment of the Personal Responsibility and Work Opportunity Reconciliation Act, which changed the definition of disability for children seeking Social Security benefits, *see* 42 U.S.C. § 1382c(a)(3)(c), there is a three step sequential process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *See* 20 C.F.R. § 416.924(a); *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987). It is insufficient that a claimant comes close to meeting the requirements of a listed impairment. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986).

Under section 416.926(a), if a child's impairment or combination of impairments does not meet or is not medically equivalent in severity to a listed impairment, then the Commissioner will assess all functional limitations caused by the impairment to determine if the child's impairments are *functionally equivalent in severity to any of the listed impairments* of Appendix 1. (20 C.F.R. § 404, subpt. P, app. 1) (emphasis added). The following areas of development (referred to as "domains") are considered in determining whether a child's impairments are functionally equivalent to a listed impairment: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for

Yourself; and 6) Health and Physical Well Being. *See* 20 C.F.R. § 416.926a. A finding of functional equivalence to a listed impairment is warranted when the child has an extreme limitation in one domain of functioning or marked limitations in two domains of functioning. *See* 20 CFR 416.926a(d).

Lengthy definitions for marked and extreme are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *See* § 416.926a(e)(2)(i). "Extreme" limitation is the rating for the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. *See* 20 CFR § 416.926a(e)(3)(I).

### C.     *Analysis and Conclusions*

As noted above, the ALJ found, after a review of the medical evidence, other record evidence, reports, and hearing testimony, that Plaintiff had only one marked limitation – in the area of acquiring and using information – but less than marked limitations in the areas of attending and completing tasks, interacting and relating to others, and ability to care for herself (Tr. 18-24). The ALJ found no limitations in the domains of moving about and manipulating objects and health and physical well-being (Tr. 23, 25).

Plaintiff's sole argument on appeal is that the ALJ erred in failing to find that Plaintiff had a marked impairment in the functional domain of attending and completing tasks (Pl.'s Br. at 7).[2]

---

[2] Any other objections to the ALJ's decision have been waived, as Plaintiff did not raise them in her motion for summary judgment. *See Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989).

Plaintiff argues that, had the ALJ found a marked limitation in that domain, as well as in the domain of acquiring and using information, she would have met the criteria for functional equivalence. *Id.* Defendant avers that substantial evidence supports the ALJ's finding that Plaintiff's combination of impairments resulted in less than marked limitations in the domain of attending and completing tasks.

The regulations define attention as the ability to regulate alertness level and initiate and maintain concentration. *See* 20 C.F.R. § 416.926a(h)(1)(i). Adjudicators consider whether a child can filter out distraction and remain focused on a task at a consistent level, change focus and then return to the task, and predict possible outcomes of actions before acting. *See* 20 C.F.R. § 416.926a(h)(1)(ii). School-aged children (6-attainment of age 12) should be able to focus attention in order to follow directions, organize school materials, complete homework and other assignments, concentrate on details, avoid careless mistakes, and change activity without distracting themselves or others. *See* 20 C.F.R § 416.926a(h)(2)(iv). Additionally, school-aged children should be able to maintain attention well enough to participate in group sports, read on their own, and complete family chores. *Id.* Examples of limitation in this domain include a propensity for becoming easily startled, distracted or overly reactive to sounds, sights, movements or touch, a slowness to focus on (or failure to complete) activities of interest, feelings of frustration and giving up on tasks the child can complete, and extra supervision for activity. *See* 20 C.F.R. § 416.926a(h)(3)(i)-(v).

Turning to the evidence in this case, the ALJ acknowledged educational reports that documented Plaintiff's concentration difficulties (Tr. 20). He also noted that Plaintiff was taking medication for ADHD (Tr. 20). Nonetheless, the ALJ found that, the record as a whole reflected that Plaintiff's attention span and ability to stay on task improved with proper medication (Tr. 20). The ALJ cited evidence that Plaintiff had consistently achieved good grades in science and technology,

writing, and penmanship (Tr. 21). The ALJ also noted no reports of "distractability" with respect to activities Plaintiff enjoyed (Tr. 21). Furthermore, the ALJ observed that, according to Plaintiff's mother's testimony, Plaintiff's focus improved when she began taking the prescription medication Concerta (Tr. 21, 40). Teachers, in particular, noted better focus with medication (Tr. 40). The ALJ also questioned the compliance with medication – Plaintiff's mother admitted instances when Plaintiff had forgotten to take it and the school called home to have it administered (Tr. 40). The ALJ reasonably relied on this evidence in arriving at his conclusion and the undersigned finds no reason to disturb the ALJ's findings.

Furthermore, the ALJ's findings were consistent with the opinion of the state reviewing psychiatrist (Tr. 224). *See* Social Security Ruling (SSR) 96-6p (state agency psychological consultants are considered medical experts in evaluating functional equivalence to the Listings). Indeed, Dr. Newhouse noted that a teacher report dated February 2007 stated that Plaintiff needed a reminder to start her assignments, but no further redirection (Tr. 133, 224). Plaintiff had no difficulty waiting her turn, and worked without distracting others (Tr. 224). Dr. Newhouse also observed reports that Plaintiff's behavior was not disruptive in school (Tr. 224).

In sum, it was reasonable for the ALJ to conclude overall that Plaintiff demonstrated less than marked limitation in attending and completing tasks as this conclusion is supported by substantial evidence. Accordingly, because Plaintiff does not have an "extreme limitation" in any domain and only has a "marked limitation" in one domain, her impairment does not functionally equal a Listed impairment and the ALJ's conclusion that she is not disabled should be affirmed. *See* 20 C.F.R. § 416.926a(e)(3)(I).

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: December 6, 2010

## *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, December 6, 2010, by electronic and/or first class U.S. mail.*

>*s/Melody R. Miles*
>*Case Manager to Magistrate Judge Mark A. Randon*
>*(313) 234-5542*